# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| CONTINENTAL CASUALTY COMPANY, an Illinois Corporation, <br><br>Plaintiff, <br><br>v. <br><br>JEFFREY ORR, Individually, <br>BRADLEY D. HOLBROOK, Individually, <br>JEFFREY JACOBSEN, Individually, <br>JACOBSEN, ORR, NELSON, WRIGHT AND LINDSTROM, P.C., a Nebraska Professional Corporation, <br>STEVE SICKLER, Individually, <br>CATHY METTENBRINK, Individually, <br>BARISTA'S COMPANY, INC., a Nebraska Corporation, <br>BARISTA'S & FRIENDS, INC., a Nebraska Corporation, CUP-O-COA, INC., a Nebraska Corporation, and W.E. CORPORATION, a Nebraska Limited Liability Corporation, <br><br>Defendants. | CASE NO. 8:07CV292 <br><br><br><br><br><br>MEMORANDUM AND ORDER ON MOTIONS FOR SUMMARY JUDGMENT |

The Plaintiff, Continental Casualty Co. ("Continental") has invoked the Court's diversity jurisdiction, and seeks a declaratory judgment pursuant to 28 U.S.C. § 2201. The Court is satisfied that it has subject matter jurisdiction, and that the exercise of its discretionary jurisdiction over the declaratory judgment action is proper.[1]

Continental is requesting the declaratory judgment to limit its liability under a Lawyers Professional Liability Policy, (the "Policy"), in a pending Nebraska state court

---

[1] In response to the Court's Order (Filing No. 69) the parties have demonstrated complete diversity of citizenship (Joint Stipulation, Filing No. 74), and all parties assert that, upon consideration of the factors suggested in *Scottsdate Ins. Co. v. Detco Indust., Inc.*, 426 F.3d 994, 998 (8th Cir. 2005), this Court should exercise its discretion to resolve this dispute. (Filing Nos. 75, 76, 77). The Court agrees.

proceeding, (the "Sickler Action").[2]  Continental argues that its liability is limited by the Policy's $2 million "per claim" limit.  The Defendants contend that the Policy's $4 million "aggregate damages" limit applies.

Pending before the Court are three Motions for Summary Judgment:  Filing No. 47 brought by Continental; Filing No. 55 brought by Defendants Jeffrey Orr, Bradley D. Holbrook, Jeffrey Jacobsen, and Jacobsen, Orr, Nelson, Wright & Lindstrom (herein collectively referred to as the "Law Firm Defendants"); and Filing No. 58 brought by Defendants Steve Sickler, Cathy Mettenbrink, Barista's Co., Inc., Barista's and Friends, Inc., Cup-O-Coa, Inc., and W.E. Corporation, LLC (herein collectively referred to as the "Clients").  Because the Court concludes that the Clients' claims are related, and that related claims are considered a single claim under the Policy, Continental's Motion for Summary Judgment will be granted, and the Defendants' Motions for Summary Judgment will be denied.

**FACTS**

The individual Clients (Sickler and Mettenbrink) owned the corporate Clients (Barista's and Friends, Inc., Cup-O-Coa, Inc., and W.E. Corporation, LLC) which were formed to serve various functions in a coffee house franchise operation, *e.g.*, warehousing and distributing food, owning real estate, and negotiating franchises. (Sickler Action, Third

---

[2] Certain of the Defendants in this action (Steve Sickler; Cathy Mettenbrink; Barista's Company, Inc.; Barista's & Friends, Inc.; Cup-O-Coa, Inc.; and W.E. Corporation, L.L.C.) brought the "Sickler Action" in the district court of Buffalo County, Nebraska, seeking damages in excess of $18 million against certain other Defendants in this action (Jeffrey Orr; Jeffrey Jacobsen; Bradley Holbrook; and Jacobsen, Orr, Nelson, Wright & Lindstrom, P.C.), insured under the Policy.  See Joint Stipulation of Undisputed Facts, Filing No. 45-1; Declaration of Richard J. Rensch, Filing No. 60, Ex. 3 ¶ 2; Third Amended Complaint in Sickler Action, Filing No. 45-5).

Amended Complaint, Filing No. 45-5, p. 3). All the Clients were "intertwined and codependent upon the success or failure of one another." (*Id.* p. 8).

The Jacobsen, Orr law firm allegedly held itself out as having special expertise in franchising law, when it lacked such expertise. (*Id.* p. 4). At least one of the Law Firm Defendants allegedly misled one or more of the Clients to believe that he and the firm had certain expertise in corporate and business law, including the specialty of creating original start-up franchise documents. (*Id.* p. 3). Another Law Firm Defendant allegedly misled one or more of the Clients to believe that he had certain expertise in corporate and business law, including business litigation. (*Id.* p. 4).

The Clients allegedly relied on the Law Firm Defendants' false representations of expertise (*id.* p.12), and engaged the Law Firm Defendants to draft a series of franchising documents, which they allegedly drafted in a negligent manner. (*Id.* p. 12-16). The Clients also allege that one or more of the Law Firm Defendants was negligent in failing to supervise other Law Firm Defendants and should have recognized and acknowledged the alleged negligent drafting of documents, but instead the Law Firm Defendants initiated litigation against certain franchisees to enforce franchise agreements which were not enforceable. (*Id.* p. 19-21). The Clients further allege that one or more of the Law Firm Defendants entered into a personal stipulated judgment, without the Clients' informed consent, in at least one lawsuit brought against the Clients by a franchisee, when the Clients had a valid defense to personal liability in the action. (*Id.* p. 21-23).

On April 26, 2006, the Clients filed the Sickler Action in the district court of Buffalo County, Nebraska, against Jeffrey Orr and Jacobsen, Orr, Nelson, Wright and Lindstrom,

P.C. (Filing No. 45-2). When the complaint in the Sickler Action was amended for the second time, in December of 2006, Jeffrey Jacobsen, Bradley Holbrook, and others were added as defendants. (Filing No. 45-4). The Clients amended their state court complaint a third time in January 2008, and it is the Third Amended Complaint in the Sickler Action that is now at issue. (Filing No. 45-5).

The question before the Court in this declaratory judgment action is the scope of coverage of the Policy that may serve to compensate the Clients for some of the damages they contend they have suffered as a result of the Law Firm Defendants' alleged negligence. Continental issued the Policy to Jacobsen, Orr, Nelson, Wright & Lindstrom, P.C., providing professional liability insurance for the firm and its lawyers for the period of September 1, 2005, to September 1, 2006.[3] The Declarations section of the Policy provides:

> 3. LIMITS OF LIABILITY:           Each Claim: $2,000,000
> [*Inclusive of Claims Expenses*][4]      Aggregate: $4,000,000

Policy p. 1.

> **Claim expenses** $4,000,000 aggregate.

*Id.* p. 22.

The Policy further provides, in part:

> *Words and phrases that appear in bold are defined in the Definitions section of this Policy.*

---

[3] Copies of the Policy can be found at Filing Nos. 1-2 and 45-7. All references to page numbers in the Policy are based on CM/ECF pagination.

[4] Deleted per Policy endorsement, p. 22.

**THIS IS A CLAIMS MADE AND REPORTED POLICY. IT APPLIES ONLY TO THOSE CLAIMS THAT ARE BOTH FIRST MADE AGAINST THE INSURED AND REPORTED IN WRITING TO THE COMPANY DURING THE POLICY PERIOD.** . . . .

I. INSURING AGREEMENT

A. Coverage

The Company agrees to pay on behalf of the **Insured** all sums in excess of the deductible that the **Insured** shall become legally obligated to pay as **damages** and **claim expenses** because of a **claim** that is both first made against the **Insured** and reported in writing to the **Company** during the **policy period** by reason of an act or omission in the performance of **legal services** by the **Insured** or by any person for whom the **Insured** is legally liable, provided that:
1. the **Insured** did not give notice to a **prior insurer** of such **claim** or a **related claim**;
2. the **Insured** did not give notice to a **prior insurer** of any such act or omission or **related act or omission**;
3. prior to:
    a. the inception date of the first policy issued by the **Company** or any subsidiary or affiliate of the **Company**, if continuously renewed; or
    b. the date the **Insured** first became a member or employee of the **Named Insured** or **predecessor firm**,
whichever is later, no **Insured** had a basis to believe that any such act or omission, or **related act or omission**, might reasonably be expected to be the basis of a **claim**;
4. there is no other policy, whether primary, contributory, excess, contingent or otherwise, which provides insurance to any **Insured** for the **claim** based on or arising out of an act or omission in the performance of **legal services** by such **Insured** or by any person for whom the **Insured** is legally liable while affiliated with a firm other than the **Named Insured**.

*Id.* p. 4-5.


II. LIMITS OF LIABILITY AND DEDUCTIBLE

A. Limit of liability - each **claim**

Subject to paragraph B. below, the limit of liability of the **Company** for **damages** for each **claim** first made against the **Insured** and reported to the

> **Company** during the **policy period** shall not exceed the amount stated in the Declarations for each **claim**.
>
> B. Limit of Liability - in the aggregate
>
> The limit of liability of the **Company** for **damages** for **claims** first made against the **Insured** and reported to the **Company** during the **policy period** shall not exceed the amount stated in the Declarations as the aggregate.

*Id.* p. 23.

> D. Multiple insured, claims and claimants
>
> The limits of liability shown in the Declarations and subject to the provisions of this Policy is the amount the **Company** will pay as **damages** and **claim expenses** regardless of the number of **Insureds**, **claims** made or persons or entities making **claims**. If **related claims** are subsequently made against the **Insured** and reported to the **Company**, all such **related claims** whenever made, shall be considered a **single claim** first made and reported to the **Company** within the **policy period** in which the earliest of the **related claims** was first made and reported to the **Company**.

*Id.* p. 6.

> III. DEFINITIONS
>
> Whenever used in this Policy:
> . . . .
> B. **"Claim"** means a demand received by the **Insured** for money or services arising out of an act or omission, including **personal injury**, in the rendering of or failure to render **legal services**. A demand shall include the service of suit or the institution of an arbitration proceeding against the **Insured**.

*Id.* p. 8.

> O. **"Related acts or omissions"** mean all acts or omissions in the rendering of legal services that are temporally, logically or causally connected by any common fact, circumstance, situation, transaction, event, advice or decision.
>
> P. **"Related claims"** mean all claims arising out of a single act or omission or arising out of related acts or omissions in the rendering of legal services.

*Id.* p. 11.

6

All parties agree that there is no genuine issue of material fact with respect to this declaratory judgment action, because the Court is being asked to apply the language of the Policy to the *allegations* contained in the Third Amended Complaint in the Sickler Action to determine whether the Policy's $2 million per-claim limit or $4 million aggregate-damages limit applies. (See Filing No. 75 p. 12; , Filing No. 76 p. 12; Filing No. 77 p. 7). All parties also agree that the matter before the Court is governed by Nebraska contract law. (Filing No. 75 p. 11; Filing No. 76 p. 11; Filing No. 77 p. 7).

## STANDARD OF REVIEW

Summary judgment is proper if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Cordry v. Vanderbilt Mortg. & Fin., Inc.*, 445 F.3d 1106, 1109 (8th Cir. 2006) (quoting *Bockelman v. MCI Worldcom, Inc.*, 403 F.3d 528, 531 (8th Cir. 2005))*.*

Summary judgment is "properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

## DISCUSSION

The meaning of an insurance policy is a question of law. *Boutilier v. Lincoln Benefit Life Ins. Co.*, 681 N.W.2d 746, 749 (Neb. 2004). "When the terms of the contract are clear, the court may not resort to rules of construction, and the terms are to be accorded their plain and ordinary meaning as an ordinary or reasonable person would understand them."

7

*Id.* at 750. "While an ambiguous insurance policy will be construed in favor of the insured, ambiguity will not be read into policy language which is plain and unambiguous in order to construe it against the preparer of the contract." *Id.* "[T]he language of an insurance policy should be read to avoid ambiguities, if possible, and the language should not be tortured to create them." *Poulton v. State Farm Fire and Casualty Co.*, 675 N.W.2d 665, 671 (Neb. 2004) (citing *Guerrier v. Mid-Century Ins. Co.*, 663 N.W.2d 131 (Neb. 2003)). "A contract, such as an insurance policy, is ambiguous when a word, phrase, or provision in the contract has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings." *Poulton* at 673 (citing *Volquardson v. Hartford Ins. Co.*, 647 N.W.2d 599 (Neb. 2002)). "[T]he fact that parties to a document have or suggest opposing interpretations of the document does not necessarily, or by itself, compel the conclusion that the document is ambiguous." *Tighe v. Combined Ins. Co. of America*, 628 N.W. 2d 670, 675 (Neb. 2001). "The [insurance] contract must be construed as a whole, and if possible, effect must be given to every part thereof*.*" *Reisig v. Allstate Ins. Co.*, 645 N.W.2d 544, 550 (Neb. 2002).

"Context is often central to the way in which policy language is applied: the same language may be found both ambiguous and unambiguous as applied to different facts. [A court] will apply the ordinary meaning of particular terms to the facts of the case to determine if it is ambiguous as to those facts." *Highwoods Properties, Inc. v. Executive Risk Indemnity, Inc.*, 407 F.3d 917, 923 (8th Cir. 2005). "[A] term should be found unambiguous if the facts of the case 'comfortably fit within the commonly accepted definition of the concept,' but may be ambiguous if the facts fall on the margins of a broad

reading." *Id.* at 924 (quoting *Gregory v. Home Ins. Co.*, 876 F.2d 602, 606 (7th Cir. 1989)).

Continental first argues that the term "claim" is synonymous with "complaint" and, because the Sickler Action is one lawsuit, it must be considered as one "claim" even if it were to contain separate causes of action based on unrelated wrongful acts. This Court rejects that argument. In 1998, the Nebraska legislature revised its joinder statutes to allow a plaintiff to bring in a single action as many independent claims, legal or equitable, as he or she "has against an opposing party." Neb. Rev. Stat. § 25-701 (Cum. Supp. 2006). Such claims no longer need affect all parties to the action. Neb. Rev. Stat. § 25-702 (Reissue 1995) (repealed 1998). In Nebraska, therefore, the term "claim" is not synonymous with "complaint," and a single lawsuit may contain multiple claims.

Continental next argues that the claims in the Sickler Action are all "related," as that term is defined by the Policy and applicable law. This Court agrees that all of the allegations, causes of action, and claims for relief against the Law Firm Defendants in the Sickler Action are based upon alleged acts or omissions that are temporally, logically and causally connected by common facts, circumstances, situations, transactions, events, advice, and decisions. The Clients sought legal services from the Law Firm Defendants in order to develop an enterprise of coffee shop franchises. As the Clients allege in the Third Amended Complaint, all the Clients were intertwined and codependent in this venture. While the Law Firm Defendants may have committed separate acts of alleged negligence, with one alleged mistake leading to another, all the allegations center on the

9

Law Firm Defendants' acts or omissions related to the Clients' initiation of a coffee shop franchise venture.[5]

The U.S. Court of Appeals for the Eighth Circuit addressed a similar dispute in *Highwoods Properties, Inc. v. Executive Risk Indemnity, Inc*., 407 F.3d 917, 923 (8th Cir. 2005). The insurance policy in question provided that "[a]ll Related Claims will be treated as a single Claim made when the earliest of such Related Claims was first made, or when the earliest of such Related Claims is treated as having been made." *Id.* at 922. The policy defined "related claims" as: "all Claims for Wrongful Acts, based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving the same or related facts, circumstances, situations, transactions or events or the same or related series of facts, circumstances, situations, transactions or events." *Id.* The Eighth Circuit Court found that the term "related" had a common meaning, "sufficiently clear to be applied." *Id.* at 924. It agreed with the Seventh Circuit Court's holding in *Gregory v. Home Ins. Co.*, 876 F.2d 602, 606 (7th Cir. 1989), that the term "covers a very broad range of connections, both causal and logical." When applying the policy language to facts of two lawsuits brought against the insured, one for breach of fiduciary duty and one for securities

---

[5]The Law Firm Defendants' act or omission that is most arguably independent of other acts or omissions concerned their representation of the Clients in the "Nesler Litigation." That litigation allegedly subjected Sickler and Mettenbrink to the entry of a personal judgment in favor of a franchisee when a valid defense to avoid personal liability existed (Filing No. 45-5, p. 8). Nevertheless, the acts or omissions allegedly committed by the Law Firm Defendants with respect to the "Nesler Litigation" are "logically or causally connected by . . . common fact[s] [and] circumstance[s]" to the other claims in the Third Amended Complaint and as such are "related claims" as defined by sections III. O and III. P. of the Policy. The"Nesler Litigation" would not have occurred but for the Law Firm Defendants' other acts and omissions with respect to the franchising of Barista's Daily Grind.

fraud, the Eighth Circuit concluded that the claims were related and a single claim, although the two actions did not arise out of identical facts. *Highwoods Properties*, 407 F.3d at 924.

The Law Firm Defendants argue that the Sickler Action involves claims made against individual attorneys, alleging unique damages to different clients to whom the lawyers owed separate duties. Whether or not that is so, the acts or omissions allegedly committed by the Law Firm Defendants are "related acts or omissions" as defined in section III. O. of the Policy, and the Clients' claims are "related claims" as defined in section III. P. of the Policy, and as such terms are commonly used. The terms of the Policy at issue here are not ambiguous when applied to the facts of this case.

The Defendants' remaining arguments suggest a parsing of the Policy language to circumvent the related-claims language in sections II. D., III. O., and III. P.

The Law Firm Defendants argue that related claims made after the end of a policy year, such as those added by the Clients in their Second and Third Amended Complaints, should be considered as separate from the first-made claim, triggering the aggregate-damages limit of the Policy, or that the Policy language on this subject is ambiguous and should be construed in favor of the Insured. The Policy language in question, in section II. D. of the Policy, quoted above, is not ambiguous, nor does it suggest that subsequently made claims are to be considered as separate from a related first-made claim. Section II. D. of the Policy states that "all such **related claims**, whenever made, shall be considered a **single claim** first made and reported to the **Company** within the **policy period** in which the earliest of the **related claims** was first made and reported to the **Company**." To

suggest that "all such **related claims**, whenever made" refers only to related claims made in subsequent policy years, or only to the second and subsequent related claims, invites the Court to torture the language of the Policy to create ambiguity. The Law Firm Defendants' proposed construction of the Policy also would permit claimants to circumvent the per-claim limit of the Policy with such ease as to render the per-claim limit meaningless.

The Clients argue that the term "related claims" as used in the Policy refers only to claims made or reported during the term of the Policy that relate back to claims made in prior years, governed by policies issued by other insurers or by earlier policies issued by Continental. In support of this argument, the Clients note that the reference to "related claims" in section I. of the Policy, describing the Policy's "Coverage," is a description of claims *excluded* from coverage by virtue of the fact that they relate back to a prior claim covered by an earlier policy. The Clients ask the Court to ignore the references to "related claims" and "related acts or omissions" appearing in sections II. D., III. O., and III. P. of the Policy, as irrelevant.

The language in section II. D. of the Policy, describing the limits of liability in the event of multiple claims or claimants, does not suggest that "related claims" are exclusively those related to claims made or reported in *preceding* policy years. Nothing in the language suggests that "related claims" cannot be made in the same policy year as the first-made claim, or even in immediate sequence with the first-made claim, as in the case of multiple claims in a single lawsuit. The Clients' proposed construction of the Policy invites the Court to torture the Policy language to create ambiguity; to ignore language in all but the first section of the Policy; and to construe the Policy language in such a way that

would deny the Insured coverage for related claims asserted after the end of the Policy year.

## CONCLUSION

The Clients' first claim against the Law Firm Defendants was made and reported in the Policy year. All the Clients' subsequent claims are related to the first-made claim and to each other because they arose out of acts or omissions that were temporally, logically or causally connected by common facts, circumstances, situations, transactions, events, advice or decisions. The Clients' claims are, therefore, subject to the $2 million per-claim limitation in the Policy.

IT IS ORDERED:

1. The Motion for Summary Judgment of Plaintiff Continental Casualty Company (Filing No. 47) is granted;

2. The Motion for Summary Judgment of Defendants Jeffrey Orr, Bradley D. Holbrook, Jeffrey Jacobsen, and Jacobsen, Orr, Nelson, Wright and Lindstrom, P.C. (Filing No. 55) is denied;

3. The Motion for Summary Judgment of Defendants Steve Sickler, Cathy Mettenbrink, Barista's Company, Inc., Barista's & Friends, Inc., Cup-O-Coa, Inc., and W.E. Corporation, LLC (Filing No. 58) is denied; and

4. A separate Judgment will be entered.

Dated this 3rd day of July, 2008

          BY THE COURT:

          s/Laurie Smith Camp
          United States District Judge